## BLAIN v. CHIPPEWA CIRCUIT JUDGE.

1. MANDAMUS—COMPELLING' DISSOLUTION OF INJUNCTION—CONDITION PRECEDENT.

A motion to dissolve a preliminary injunction is a condition precedent to the issuance of a writ of mandamus compelling its dissolution.

2. OFFICERS—DE FACTO OFFICERS—INTRUSION BY CLAIMANT.

A candidate for a city office, who is in possession of it by virtue of a holding over, and under a declaration of election by the common council acting as a board of canvassers, is a de facto officer, though there is a bona fide dispute between him and a rival candidate, and his rival is not justified in attempting to take possession of the office by violence.

3. SAME — INJUNCTION AGAINST INTRUSION — MANDAMUS TO DISSOLVE—PROPRIETY.

A candidate for a city office to succeed himself was declared elected by the outgoing council, and filed his bond, continuing in possession of the office. The incoming council declared his opponent elected, and he filed his bond, and forcibly took possession of the office and such of the papers thereof as he could secure. On a bill by the officer claiming to hold over, a preliminary injunction was issued restraining the intruder from interfering with complainant's possession of the office until the title could be tried in a proper proceeding for that purpose. Held, that the court had jurisdiction to issue the injunction, that it was no abuse of discretion to refuse to try title to the office in that proceeding, and that this court would not try such title in a proceeding in mandamus to compel the dissolution of the injunction, though it was claimed that the title depended solely on a construction of the city's charter set out in the proceedings.

CARPENTER, C. J., and McALVAY and BLAIR, JJ., dissenting.

Mandamus by Thomas Blain to compel Joseph H. Steere, circuit judge of Chippewa county, to vacate a temporary injunction. Submitted May 26, 1906. (Calendar No. 21,721.)   Writ denied July 9, 1906.

*M. M. Larmonth* and *M. F. McDonald*, for relator.

*Oren, Webster & Carleton* and *F. T. McDonald*, for respondent.

HOOKER, J.   The relator and one Hecox were opposing candidates for the office of recorder of the city of Sault Ste. Marie at the recent election.   Hecox was recorder last year.   The returns of inspectors showed that Blain received 948 and Hecox 943 votes.   The old council met as a board of canvassers April 5, 1906, and refused to canvass these returns, for the reason that Hecox had demanded a recount in three wards.   A resolution was adopted granting the recount, and a committee was appointed to make the count.   Blain, by counsel, protested against this action.   The council was adjourned to April 7th, when the committee reported that on April 6th they had been enjoined, at the suit of Mr. Blain, from opening the boxes or counting the ballots by a writ of injunction, allowed by a circuit court commissioner, and had not, therefore, made the recount.   They had, however, taken the testimony of two inspectors in the second ward (one of the wards to be recounted under the resolution), and that it showed that about 30 ballots were cast which were not initialed by the proper inspector, and to the best of their recollection 8 were cast for Mr. Hecox and 22 for Mr. Blain, and that after inspecting the returns of the inspectors and taking into consideration the aforesaid testimony the council found that Hecox had received 935 votes and Blain 926.   Thereupon the council passed a resolution declaring Hecox elected.

On April 16th the new council met, and the relator, Blain, presented a written request that the council forthwith canvass the returns of the inspectors, and declare him elected to the office of recorder, which was done.   He filed an oath of office and a bond, and claims to have been in full possession of the office and performing all of the duties of recorder, when a bill was filed by Hecox, upon which the circuit judge made an order to show cause why

a preliminary injunction should not issue to restrain intrusion by the relator, into said office, until the title to said office should be lawfully determined, in a proper proceeding, and upon the hearing made the following order:

" Defendants having been heretofore ordered to show cause why an injunction should not be allowed as prayed for in said bill of complaint, and hearing thereon having been adjourned to this day, and the said defendants, by way of showing cause, having filed a sworn answer to said bill of complaint, and said matter coming up for consideration upon said bill and answer, and after hearing M. M. Larmonth, solicitor for defendants in their behalf, and Horace M. Oren, one of the solicitors for complainant on the latter's behalf; it appearing that on the 17th day of April, A. D. 1906, said complainant was in full possession of the office of city recorder of the city of Sault Ste. Marie, its books, records, and property, engaged in the performance of the duties of said office without obstruction, and that on said date said defendants, without process or order of any court, forcibly broke open the door of said office, took possession of such books and papers as were not in the safe, and forcibly ejected complainant from the room, in which said office is located, and by force and threats prevented him from entering said office and performing his duties therein; therefore in restraint of unseemly conduct and to restrain invasion by force, without passing upon the de jure rights of the contestants herein, it is ordered that a peremptory writ of injunction do forthwith issue under the seal of this court commanding the said Thomas Blain and George Barr, their counselors, attorneys, solicitors, and agents and each and every one of them, that they forthwith desist from further taking possession of the books, papers and property appertaining and belonging to the office of recorder of the city of Sault Ste. Marie; that they desist from preventing said Clyde W. Hecox, complainant herein, from keeping possession thereof; that they desist from excluding said complainant from the rooms of the office of recorder of the city of Sault Ste. Marie; and that they desist from any interference with said complainant in his full performance of all the duties of the office of recorder of the city of Sault Ste. Marie, until the rights of the said Clyde W. Hecox not to

hold said office is judicially declared in a proper proceeding brought to that end.

"Dated April 25, A. D. 1906."

The relator thereupon obtained an order requiring the circuit judge to show cause why a mandamus should not issue to compel him to dissolve said injunction, to which he made answer.

We do not discover that a motion was made to dissolve the injunction before application for a mandamus was made. This was a formal prerequisite; see *Stenglein* v. *Saginaw Circuit Judge*, 128 Mich. 440. But counsel seem to have raised no question over the practice, and, inasmuch as the injunction was allowed after a hearing upon a preliminary order to show cause, we dispose of the cause on other grounds. It is not to be considered a precedent that will be followed hereafter, however.

The return of the respondent states in full the proceedings of the council whereby Hecox was declared elected, and that the answer of relator to complainant's bill did not question the facts stated in proceedings, and that in said answer it was admitted, as stated in the bill, that upon the declaration of Hecox's election, on the 7th day of April, 1906, he executed and filed in the office of city recorder the constitutional oath of office, and executed an official bond as required by law; the same and the sureties thereto being approved by the council at its April 7, 1906, session. The return shows, further, that the following was made to appear, and respondent took it as true:

"That on the 17th day of April at about 11 o'clock in the morning said Blain appeared at the office of said city recorder with one George Barr, a deputy sheriff in and for said county, without process, or any order of court entitling them to take possession of said office; that the said Thomas Blain thereupon demanded said office, and, upon Hecox's refusal to turn the same over, with the aid of Barr forcibly broke open the door of said office, took possession of such of the books and papers of said office as were not in the safe, and forcibly ejected complainant from the room in which said office is located, and by force

and threats prevented said Hecox, his deputy, and clerk from entering said office and from further performing the duties thereof;" and that, "it did not appear by the pleadings, exhibits, affidavits, etc., before respondent at the time of the hearing upon said application for a restraining order, all of which are attached to relator's petition, that said relator Blain, at the time of the exhibition of said bill of complaint, had obtained possession of all the books, papers, records and property appertaining to said office; but it did appear that neither Blain nor Hecox were at time of the exhibition of the bill of complaint, in full possession of all of the property, records, etc., although Blain was contending that he was, but that there had been a legal and physical contention over the office, and that Blain had by force entered the office room and put Hecox out and had actually obtained possession of such books and papers in the office room as were not in the safe. And it appearing from paragraph 7 of complainant's bill that said Blain was by force and threats preventing Hecox, his deputy, and clerk from entering said office and from the further performance of the duties thereof, and that there was a probability of unseemly conduct unless the court should proceed to prevent it, the preliminary injunction was granted, the court taking the view that his authority and duty in the premises was governed by the case of *Stenglein* v. *Saginaw Circuit Judge*, reported in 128 Mich. 440."

From the foregoing statement it appears that there was a bona fide dispute as to the title to this office; that Hecox was in possession of it, by virtue of a holding over, and under a declaration by the common council—i. e., the board of canvassers. He was, therefore, a de facto officer, and, being a de facto officer, his competitor was not justified in attempting to take possession of the office by violence.

It may be said that chancery should not interfere by injunction in cases where the bill not only fails to show a prima facie right to the office in the complainant, but, on the contrary, shows such right in the defendant. In the present case it is claimed that the charter makes the new council the judge of the election of the recorder, and that, its action being final, the bill on its face shows that the

complainant was not, and that defendant was, entitled to the office, and therefore we should compel the dissolution of the injunction. On the other hand, it may be and is said that this is not a correct construction of the charter, and that there may be doubtful questions of law as well as of fact, and that there may be an erroneous decision of the former, as well as of the latter, requiring correction by an appellate court, and that there is as much propriety in protecting a complainant's interests by injunction in the one class of cases as the other, and there is force in the claim that in such a case the court is not without jurisdiction to issue the writ, and that being so, this court should not invariably compel the dissolution of the injunction, where its opinion of the disputed question of law differs from the claim of the complainant. This court has held, in many cases, that where the point in dispute, and on which the right to an injunction must turn, is a question of law, it may compel dissolution. *Van Norman* v. *Jackson Circuit Judge*, 45 Mich. 204; *City of Detroit* v. *Wayne Circuit Judge*, 79 Mich. 384; *Ionia, etc., Ins. Co.* v. *Ionia Circuit Judge*, 100 Mich. 606 (32 L. R. A. 481); *Board of Sup'rs of Wayne Co.* v. *Wayne Circuit Judges*, 106 Mich. 166; *Thomas* v. *Kent Circuit Judge*, 116 Mich. 106; *Kelsey* v. *Wayne Circuit Judge*, 120 Mich. 457; *Stenglein* v. *Saginaw Circuit Judge*, 128 Mich. 440; *Central Bitulithic Paving Co.* v. *Manistee Circuit Judge*, 132 Mich. 128. It has not held, however, that the writ must issue in every such case. See *Kelsey* v. *Wayne Circuit Judge*, supra. And we can imagine cases where it would be unjust to enforce, as a hard and fast rule, so technical a practice; e. g., where the bill might be cured by amendment. In the case of *Selchow* v. *Baker*, 93 N. Y. 59, it was held that:

"While, when a complaint shows no cause of action, the granting of a preliminary injunction is an error of law, which may be reviewed on appeal, the case must be very clear to justify the court in deciding the merits of the controversy on a mere motion, * * * and the

court would ordinarily decline in a case presenting any serious question, to deprive either party of the privilege of having the merits of his case deliberately heard and passed upon on appeal from the final judgment."

In the present case it may be said that a construction of the charter would settle whether the action of the new council is final and conclusive, and, if so, it must establish relator's right to the office; hence the propriety of this temporary injunction must finally rest on the determination of this one question of law. If it be conceded that this is true, it cannot be denied that the complainant was a de facto officer as the court held, and that the court had power to protect him in his custody of the office, until his right should be tested in a proper forum and proceeding, whether the result of such a proceeding must ultimately turn upon a question of law, or a mixed question of law and fact, and that to issue this writ upon the ground stated, would practically try the title to this office, which he was not disposed to do in that proceeding. To the suggestion that the injunction should be dissolved upon the ground that Blain and not Hecox is the de facto officer, we reply that this claim can only rest upon the proposition that, while Hecox was unquestionably an officer in possession, claiming title to the office, and performing his duties whenever occasion presented, Blain, by virtue of a trespass and the acquiescence of his friends, whereby he excluded Hecox from the official place of business, and in part of the property belonging to the office, and proceeded to perform its duties when opportunity offered, thereby *became* the de facto officer instead of Hecox, and that therefore this injunction could not be lawfully issued, because restraining him from performing the duties of the office would be ousting a de facto officer. We are of the opinion that this is unduly dignifying an attempt at forcible usurpation, and that Hecox is the de facto officer, and that if his bill made a prima facie case in the opinion of the circuit judge, it was a proper exercise of discretion to restrain interference with Hecox's performance of

duty by Blain.    Certainly the question of who is really the de facto officer cannot depend alone upon the ability of one to forcibly exclude an officer from his place of business, and while holding him out by force perform its duties to the extent of doing such business as is presented.    Such methods of obtaining possession of a contested office would have the advantage of apparent simplicity, but would not tend to the preservation of the public peace.    This opinion rests upon the belief that the bill shows Hecox to be the de facto officer, in possession of the office when the application for injunction was made.

The case of *Stenglein* v. *Saginaw Circuit Judge*, supra, cited by the learned circuit judge, is on all fours. There the right depended upon the question of the constitutionality of a law.    Here it depends on the construction of the law.    In each case the judge, in his discretion, refused to enter upon the question of the right to the office, enjoining intrusion until settled by the proper proceeding.    We think that this was not an abuse of discretion, and that we should not interfere with his discretion in that regard, by compelling a dissolution of his injunction, thereby practically trying the title to an office upon mandamus, when we cannot say that the circuit judge erred in refusing to do so on a motion to dissolve an injunction which he had jurisdiction to allow.

The writ is denied.

GRANT, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred with HOOKER, J.

CARPENTER, C. J. (*dissenting*).    One Clyde W. Hecox was recorder of the city of Sault Ste. Marie for the year ending April 9, 1906.    He was again a candidate for said office and relator was his opponent at the municipal election of said city held on the 2d of April, 1906.    According to the returns made by the inspectors of election, relator was elected by a majority of five votes.    The old council—whose term of office expired April 9th—sitting as a board of canvassers, canvassed the returns and gave

a certificate of election to Hecox, who gave a bond and duly qualified. It is not material to inquire whether this action of the old council was legal or illegal, because, in my opinion, as will hereafter appear, relator's right to the office is conclusively determined by the action of the new council.

At a meeting of the new council—wnose term of office commenced April 9, 1906—held on the 16th day of April, a resolution was passed declaring relator duly elected to said office of recorder. Relator gave a bond and took the oath of office, and on the next day, viz., April 17, 1906, by the aid of a deputy sheriff, forcibly evicted said Hecox from office and took possession of the same. On the same day Hecox filed an injunction bill in the Chippewa circuit court. On the 23d of April a motion for an injunction was heard, based upon said bill and defendant's answer thereto, and respondent thereupon ordered an injunction to issue commanding said relator to:

"Forthwith desist from further taking possession of the books, papers and property appertaining and belonging to the office of the recorder of the city of Sault Ste. Marie, * * * from preventing said Clyde W. Hecox, complainant herein, from keeping possession thereof, * * * from excluding said complainant from the rooms of the office of recorder of the city of Sault Ste. Marie, * * * and from any interference of said complainant in his full performance of all duties of the office of recorder of the city of Sault Ste. Marie until the right of the said Clyde W. Hecox not to hold said office is judicially declared in a proper proceeding brought to that end."

Relator then instituted these proceedings in this court, seeking a mandamus to compel respondent to vacate the order granting said injunction.

It is contended that respondent's action is justified by our own decision in *Stenglein* v. *Saginaw Circuit Judge*, 128 Mich. 440. In that case the lower court had issued an injunction at the instance of a de facto officer in possession of the office restraining a claimant from intering with that possession until he, the claimant, should

entitle himself to do so by proper legal proceedings, and that court refused to issue a mandamus compelling the trial court to vacate said injunction. That decision does not, in my judgment, apply. In that case the injunction prevented an incumbent being forcibly dispossessed from an office. In this case the injunction reinstated an official who had been forcibly dispossessed. As this last statement of fact may not be conceded, I will undertake to show its truth. In his petition for a mandamus, relator avers:

"By virtue of the act of said common council (viz., the resolution declaring his election as recorder) your petitioner did on the 17th day of April, 1906, take possession of the books, papers, and records of said office, and enter upon the duties of the office of city recorder and was duly recognized as such recorder by said common council, comptroller, treasurer, and all other city officials."

Respondent in his answer does not deny this averment and contents himself with saying:

"The allegations therein are not in accord with the facts presented to respondent in the bill of complaint * * * and the answer and the accompanying exhibits and affidavits. All of which are attached to relator's petition."

He then points out certain facts stated in the pleadings which do not accord with the above averment. Those facts are as follows (to save space I have undertaken to state them in my own language):

1. That Hecox, after being declared elected, duly executed an official bond which was duly approved by the old council.

2. That Hecox was his own successor as recorder; that he entered upon the succeeding term, April 9, 1906, and from that time was in possession of said office, its books, and records; that he was engaged in the performance of the duties thereof without obstruction or objection until April 17, 1906.

3. That on the 17th of April, 1906, relator forcibly broke open the door of the recorder's office and took possession of such books and papers of the office as were not in the

safe, and forcibly ejected complainant (Hecox) from the room in which said office is located, and by force and threats prevented said Hecox, his deputy and clerk from entering said office, and from further performing the duties thereof.

4. "That it did not appear by the pleadings, exhibits, and affidavits,   *   *   *   all of which are attached to relator's petition, that said relator, at the time of the exhibition of said bill of complaint, had obtained possession of all the books, papers, records, and property appertaining to said office, but it did appear that neither Blain nor Hecox were, at the time of the exhibition of the bill of complaint, in full possession of all the property, records, etc., although Blain was contending that he was; but that there had been a legal and physical contention over the office, and that Blain had by force entered the office room and put Hecox out, and had actually obtained possession of such books and papers in the office room as were not in the safe."

It will be noticed—and this is the point I wish to emphasize—that there is no denial that relator entered upon the duties of the office and was duly recognized as recorder by the common council, the controller, treasurer, and all other city officials, and Sup. Ct. Rule 13 which requires us to take every material averment in the petition not answered as true, compels us to declare that, at the time the proceedings were taken in the lower court, relator was performing the duties of the office, and recognized as recorder by the city officials. We would reach the same conclusion by considering the papers upon which the motion was heard in the lower court. The bill avers that relator:

"Forcibly broke open the door of said office, took possession of such of the books and papers of said office as were not in the safe and forcibly ejected complainant from the room in which said office is located, and by force and threats prevents complainant (Hecox), his deputy, and clerk from entering said office and from the further performance of the duties of said office."

The answer states that defendant (relator) is now in full possession of the said office and fully recognized as

said recorder by the common council, the controller, treasurer, and all other city officials  *  *  *  "and that he is exercising all the duties of said office." I conclude, therefore, that, at the time the order complained of was made, relator, though not possessed of all the official records and books, was performing the duties of the office of city recorder.

The learned counsel for respondent contends that Hecox, notwithstanding this forcible eviction, continued to be a de facto officer. If so, he was an officer de facto dispossessed of his office, asking a court of equity to reinstate him in that office. Upon what ground will equity reinstate him? Respondent made the order complained of— which evicted relator from office and installed Hecox therein—without determining that relator had no right to remain. (He, respondent, was of the opinion that he could make this order without determining relator's right to remain in office.) This, in my judgment, was an error. To dispossess one without inquiring into his right of possession is not, in my judgment, a legitimate exercise of judicial power.

"Judicial proceedings cannot be valid unless they proceed upon an inquiry and render judgment only after trial." Cooley on Constitutional Limitations (7th Ed.), p. 503.

Nor is there in *Stenglein* v. *Saginaw Circuit Judge*, heretofore cited, anything opposed to this reasoning. There we held that the circuit court may, without determining conflicting rights to an office, prevent a claimant thereto from forcibly evicting an actual incumbent. That case is not an authority for the very different proposition —the proposition involved in this case—that a court may evict one who has obtained an office without determining his right to remain in said office. Though a court may, without determining rights, prevent one from asserting his rights, it cannot, in my judgment, for the reasons I have already stated, dispossess him of rights without making such determination. If this distinction did not

exist, we would not have held, as we have (see *People* v. *Simonson*, 10 Mich. 335), that, without an opportunity to be heard, one cannot by injunction be dispossessed of property.

But it is said that respondent could not determine that relator had, and that Hecox had not, the right to the office because a court of law and not a court of equity should determine the title to an office. The principal ground upon which a court of law determines title to an office is that:

"Proceedings upon information in the nature of a quo warranto * * * is the only remedy in which judgment of ouster can be had against an actual incumbent, and the person rightfully entitled can be put into possession of the office." High on Extraordinary Legal Remedies (3d Ed.), § 77.

If this principle is violated when a court of equity, in pursuance of a judicial determination, ousts an incumbent from office and installs another therein—and it certainly is—it is more obviously violated if that ouster is made without such determination. · We then have two grounds for declaring that the order complained of was erroneous: (*a*) That it ousted the rightful incumbent from office (this we will endeavor to show hereafter); and (*b*) that this ouster was effected by a court of equity and not by a court of law. To urge that relator's only remedy is to resort to quo warranto proceedings—which is a new and independent proceeding—is to altogether' deny the authority of this court to correct the error of the lower court. Surely it has that authority. Can that error be corrected by issuing a writ of mandamus ? If this error is not corrected until the case can be disposed of in this court upon appeal from a final determination, probably more than one-half of relator's term of office (two years) will have expired. In the meantime he is excluded from an office to which he has an unquestioned right, and the duties of that office are performed and the emoluments received by a defeated candidate. Nor should we forget

that it is the right of the people of Sault Ste. Marie to have the office of recorder filled by the person they have elected, and, as hereafter appears, it is conclusively determined that they elected relator. To exclude him from that office is to deprive them of a right. In short, this is a case in which delay will work a mischief which I think may properly be called irreparable. It is therefore a proper case for the issuance of a writ of mandamus. *Michigan Mut. Fire-Ins. Co.* v. *Wayne Circuit Judge,* 112 Mich. 270.

The suggestion is made that we ought not, in issuing this writ, to determine relator's right to the office. To this I cannot assent. Relator is not, in my judgment, entitled to a writ of mandamus unless he had a right to the office from which the order complained of ousted him. As already shown, that order was improperly made because the ouster should have been made by proceedings in the nature of a quo warranto and not by injunction in a court of equity. This impropriety does not, however, entitle relator to relief. He is not entitled to have that order vacated by writ of mandamus unless it deprived him of some right. The only right of which it deprived him was the right to remain in office. To grant the mandamus applied for we must therefore determine that relator had a right to remain in the office from which he was ousted.

It has been suggested that the rule heretofore referred to, viz., " that quo warranto proceedings is the only remedy by which judgment of ouster can be had against an actual incumbent" prevents our making that determination. If so, Hecox is, by reason of this rule, permitted to retain rights which he obtained by its violation. To issue the mandamus asked for will not, in my opinion, violate the rule. It will merely compel the vacation of an order which does violate it. It is true that in determining that the order of ouster was improperly made we determine its impropriety. This we must do. It is also true that in reaching that determination we determine the questions

necessarily involved. This, too, we must do. One of those questions is this: Had relator a right to the office from which he was evicted ? This, as will hereafter appear, is a pure question of law which we can in this proceeding determine just as accurately as in any subsequent proceeding. This is a question which should be speedily determined, and I think it is our duty to determine it now.

I do not think that the rule heretofore referred to, viz., that an ouster from office should be effected by quo warranto proceedings, excuses us from determining all questions necessarily involved in any case which it is our duty to decide. See *School District* v. *Weise*, 77 Minn. 167.

In *Lawrence* v. *Hanley*, 84 Mich. 399, the right of an incumbent to remain in office from which an effort was made to evict him was determined in mandamus proceedings.

In *Dew* v. *Judges of Sweet Springs*, 3 Hen. & M. (Va.) 1, the right of an incumbent to an office from which he had been wrongfully evicted was determined in a mandamus proceeding, and he was restored to office by the writ of mandamus.

It follows that relator should not have been evicted from office as he was by the order under consideration if he had the right to remain therein, and that such right should be determined in these proceedings. If relator had the right to the office, and if Hecox had not, the circumstance that the former obtained possession of the same by force is, in my judgment, altogether unimportant. If relator, in taking this forcible possession, violated any of Hecox's legal rights he did not violate his right to remain possessed of the office, because Hecox did not have that right. If Hecox had no right to the office, his eviction therefrom clearly did not give him such right.

Had relator the right to remain in office ? His claim to that right is based—not on the fact that according to the original returns he received a majority of the votes cast— but on the resolution of the new council declaring him elected. This claim is well founded if that council had

authority to determine who was elected recorder of Sault Ste. Marie. Had it that authority? That depends upon the proper construction of the city charter. We quote from chapter 6 of said charter [Act No. 533, Local Acts 1887]:

"SECTION 1. The legislative authority of the city shall be vested in a council consisting of the mayor, two aldermen elected from each ward, and the city recorder. * * *

"SEC. 4. The recorder shall be clerk of the council, but shall have no vote therein. * * *

"SEC. 5. The council shall be judge of election returns and qualifications of its own members."

The language of section 5 above quoted is substantially like that of section 5 of article 1 of the Constitution of the United States, which reads:

"Each house shall be the judge of the elections, returns and qualifications of its own members."

It is also like that of section 9, art. 4, of our State Constitution, which reads:

"Each house shall * * * judge of the qualifications, elections and returns of its members."

As this language in the Constitution clearly made each house the final judge of the election of its members, so we have no doubt that section 5, above quoted, made the council of the city of Sault Ste. Marie the final judge of the election of its members. We will spend no time to prove that the council thus made the judge of the election of its members was the new council and not the old. That is settled by *Hilton* v. *Grand Rapids Common Council*, 112 Mich. 500.

This brings us to the question: Is the recorder one of "its own members," of whose election the council is made the judge? This depends upon the legislative intent. The question is whether the recorder is one of the members of the council in the sense in which the legislature used the word "members," and not whether he is *actually*

a member of the council. This distinction is important because there is obviously a difference between the voting council consisting of two aldermen from each ward, and the council defined by the legislature consisting of those aldermen, the mayor, and recorder. And there is just as obviously a distinction between members of the former council and members of the latter council. It is claimed that by other provisions in the very chapter of the charter from which the above provisions are quoted the legislature has recognized this distinction. For instance, section 2 of said chapter [as amended by Act No. 460, Local Acts 1899] provides that certain ordinances or resolutions shall not go into effect unless "passed by a two-thirds vote of all the members of the common council elect, exclusive of the mayor." And section 11 provides that "the council may provide by ordinance for the appointment of standing committees of its members." Other illustrations might be added. It is claimed that, in these instances, the legislature used the term "council" in a restricted sense, intending to describe the voting council, and that it used the term "members" of the council intending to describe only the members of the voting council. The contention is made that the legislature used the term "members" in this restricted sense in the section in which it made the council judge of the election "of its own members." To this I cannot agree. When the legislature said, in section 1 of chapter 6 of the charter: "The legislative authority of the city shall be vested in a council consisting of the mayor, two aldermen elected from each ward, and the city recorder," it clearly indicated that all the officials named were members of the council, for clearly the officials of whom the council consists are its members. In section 1 of chapter 6, heretofore quoted, the legislature names the officials which in its opinion are members of the council. It says in the opinion of the legislature, the mayor, the recorder, and the aldermen are members of the council. This, then, is a legislative definition of "the members" of the council.

Though the legislature did in some instances in this very chapter disregard this definition, its intention to disregard it generally cannot be presumed. On the contrary, it must be presumed that the legislature generally regarded its own definition. Indeed, I think it should be presumed that it gave this definition to furnish a key for construing the act. So, when this word is used, it is to be presumed that the legislature used it according to its own definition, unless the contrary appears. As there is nothing to indicate the contrary, it is to be presumed that the term "members," in section 5, was used according to the legislative definition, and that it described the recorder and mayor as well as the aldermen, and that the council was therefore made the final judge of the election of each of these officers.

It is thought to be an objection to this construction that it permits those who vote in the council, viz., the aldermen, to determine the election of those who do not vote in the council, viz., the mayor and recorder. I am unable to perceive the force of this objection. There is nothing anomalous in this circumstance. It existed in *Weston* v. *Kent Probate Judge*, 69 Mich. 600, where the power of the common council to determine finally the election of a mayor, except " when the votes of the other members are equally divided," was upheld. Nor do I think that any fundamental principle is violated by making the council of a municipality the final judge of the election of its own clerk. It follows that the determination by the new council that relator was elected recorder was final, that after that determination he alone was the rightful recorder, that he had a right to remain in the office from which the order in question evicted him, and that a mandamus should issue compelling respondent to vacate said order.

McALVAY and BLAIR, JJ., concurred with CARPENTER, C. J.